IN the MATTER OF DISCIPLINARY PROCEED-
INGS AGAINST John W. STRASBURG, Attorney at
Law.

Supreme Court

*No. 89-0457-D. Filed March 15, 1990.*

(Also reported in 452 N.W.2d 152.)

PER CURIAM. *Attorney disciplinary proceeding; attorney's license suspended.*

We review the recommendation of the referee that the license of John W. Strasburg to practice law in Wisconsin be suspended for two years as discipline for professional misconduct. That misconduct consisted of the following: permitting persons other than his clients to direct the work he performed on his clients' behalf, neglecting clients' legal matters and failing to communicate with them prior to taking action on their behalf, representing conflicting interests without fully disclosing

the conflict and without obtaining client consent, charging clearly excessive fees, becoming verbally abusive and threatening legal action to collect a fee prior to completing a client's legal work and billing and collecting costs from clients in excess of amounts actually incurred.

We determine that the recommended two-year license suspension is appropriate discipline for this misconduct. In two cases, Attorney Strasburg allowed clients' relatives to direct the legal work he performed on behalf of his clients, charged excessive fees for his services and engaged in a pattern of collecting from his clients payment of costs either not actually incurred in the course of their legal representation or in amounts greater than those incurred. By his misconduct, Attorney Strasburg has violated his fundamental duties as a lawyer to exercise his professional judgment on his clients' behalf and to deal honestly with them. By overcharging his clients and overstating costs incurred on their behalf, he took client money to which he was not entitled. In addition to the license suspension, it is appropriate as part of the disposition of this proceeding that Attorney Strasburg be required to make restitution to his clients, as the referee has recommended.

Attorney Strasburg, who was admitted to the practice of law in Wisconsin in 1972 and practices in Milwaukee, has not previously been the subject of an attorney disciplinary proceeding. On the basis of stipulations he entered into with the Board of Attorneys Professional Responsibility (Board), the referee, Attorney Charles Herro, made the following findings of fact concerning Attorney Strasburg's misconduct in four separate matters.

The first matter concerned Attorney Strasburg's retainer in April, 1985 by a couple to represent the woman's mother in a guardianship and protective place-

ment proceeding. The couple wanted to know what the mother's legal rights were, as well as her entitlement to benefits for nursing home care. Although he considered the mother to be his client, Attorney Strasburg did not meet or speak with her until three weeks after he had been retained.

Prior to meeting with his client, Attorney Strasburg advised the couple to close the mother's savings account, which had a balance of approximately $31,000, and place the money in the daughter's name in order to commence a two-year waiting period for benefit eligibility. Attorney Strasburg also had a psychologist evaluate the mother's competence because, the day before he had been retained, a clinical psychologist had examined the mother and concluded that she was incompetent to provide for herself and manage her affairs. The psychologist Attorney Strasburg engaged examined the woman and concluded that she had apparently undergone significant improvement from the prior examination but, although concluding that she was then competent to make a gift to her own child, he could not with a high degree of professional certainty determine her competency on the date when her daughter, on Attorney Strasburg's advice, transferred the funds from her savings account. Attorney Strasburg took other action without first consulting his client: he spoke with her guardian ad litem regarding his intention to file an objection to the guardianship action, spoke with corporation counsel regarding the guardianship petition, spoke with an accountant regarding preparation of gift tax returns and spoke with her son-in-law regarding his client's recent history, her signing of a power of attorney and the transfer of her savings account funds.

When Attorney Strasburg finally met with his client, for the first and only time, she told him she wanted

her daughter to be her guardian if one was required but stated that she did not want a guardian and did not want to be protectively placed. Twelve days later, Attorney Strasburg prepared a family trust document, which was executed by the daughter and son-in-law, by the terms of which all of his client's money that had been transferred was placed in trust, with the couple named grantors and trustees having sole discretionary authority to apply income and principal for the client's direct or indirect benefit as they deemed advisable. In the event the trust were revoked, the assets would vest in the client and, upon her death, would be distributed to the daughter.

Notwithstanding that it was her money that funded the trust, the client had never instructed Attorney Strasburg to prepare the trust document or establish the trust; Attorney Strasburg did so at the direction of the daughter and son-in-law. He then submitted bills for his services, totaling almost $3,000, to the client in care of the daughter and son-in-law. Those statements had never been shown to his client for review or approval.

The referee concluded that Attorney Strasburg violated SCR 20.30(2)[1] by permitting persons other than his client to direct his professional judgment in the rendering of legal services to the client and neglected his client's legal matter, in violation of SCR 20.32(3),[2] by failing to communicate with the client prior to taking actions on her behalf.

The second matter considered in this proceeding concerned Attorney Strasburg's being retained by a woman in 1987 to obtain welfare benefits for her mother. As a retainer, the woman gave him two checks, totaling

---

[1]The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:1.7.

[2]The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:1.3.

$4,500, drawn on her mother's account and to which she had signed her mother's name. Nevertheless, even though he had no reason to believe that the checks had not been signed by the mother, Attorney Strasburg considered the daughter, not the mother, to be his client.

Notwithstanding his perception of the attorney-client relationship, Attorney Strasburg submitted his bill, in the amount of $4,500, to the mother for the following services: drafting a deed and transfer return regarding the mother's property, terminating a joint tenancy in her property and preparing a family trust document, a durable power of attorney, a will and a living will. His bill also listed the preparation of federal and state gift tax returns and an application for a federal identification number but those documents in fact had been prepared by an accountant. The bill also showed that Attorney Strasburg had advanced costs totaling $1,020 and unspecified amounts purported to have been paid to the accountant, to a title insurance company and to a register of deeds.

Although his bill was addressed to the mother and her funds were used to pay the fees and costs, the mother never saw or approved the billing statement; her son-in-law approved it. Further, Attorney Strasburg overcharged the woman $500 for the accountant's services. He subsequently refunded that $500 during the course of the Board's investigation into this matter but he sent the refund to the daughter and son-in-law, not to the woman whose funds had been used to pay him. Regarding the computation of his fees in this matter, Attorney Strasburg did not maintain any time records for the services he rendered.

Even though all of the documents he prepared directly affected the woman's interests, Attorney Strasburg never spoke to or met with her concerning the

effect of those documents. Moreover, he never sought or obtained the woman's consent to act on matters directly affecting her and never sought to explain to her the effect of an irrevocable and complete divestiture of her assets, which amounted to approximately $100,000. His stated reason for not doing so was that he did not make "house calls."

The referee found that all the documents Attorney Strasburg prepared in this matter were simple and routine and that, although Attorney Strasburg determined which documents were to be prepared, the actual preparation was done by his legal assistant from standard forms maintained in his office. The referee also found that Attorney Strasburg did not supervise the execution of any of those documents and, as a result, most of them were not properly executed.

As a result of the ambiguity, vagueness and confusion concerning the identity of the client in this matter, the referee concluded that Attorney Strasburg represented conflicting interests without fully disclosing the conflict and without obtaining client consent, in violation of SCR 20.28(2) and (3).[3] The referee also concluded that Attorney Strasburg neglected the legal matter, in violation of SCR 20.32(3), by failing to meet or speak with the woman concerning the legal effect of documents he had prepared and by failing to supervise their execution. In addition, the referee concluded that Attorney Strasburg charged and collected a clearly excessive fee for the routine legal services he rendered, in violation of SCR 20.12,[4] and engaged in conduct involving dishon-

[3]The corresponding provision of the current Rules of Professional Conduct for Attorneys are SCR 20:1.7(a) and (b) and 20:1.9.

[4]The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:1.5.

esty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4),[5] by overcharging for the accountant expenses incurred.

The third matter before us concerns Attorney Strasburg's handling of the probate of an estate. When retained, Attorney Strasburg told his client that his total fee would be approximately $2,000 and asked for and obtained a retainer of $1,325. Subsequently, he told the client that the range of his fee would be from $1,800 to $3,000, including court costs and an accountant fee for tax work, adding that the fee most likely would be toward the lower end of that range if there were no contests during probate. He also told the client that the balance of his fee would not be due until the probate was completed.

The estate proceeding involved simple matters, as the decedent had died intestate and there was no disagreement among his surviving children that one of them would inherit the homestead, virtually the only asset of the estate, which was valued at $43,400. Attorney Strasburg prepared waivers and quitclaim deeds for the other children to sign but, because they were not in standard form, those children retained an attorney to review them. That attorney advised his clients not to sign the documents Attorney Strasburg had prepared and he himself prepared a disclaimer and assignment for them to sign, for which he charged $135. In discussing the matter with that attorney, Attorney Strasburg offered to have his client pay that fee, although he had not informed his client or obtained his consent.

When Attorney Strasburg commenced the informal administration of the estate, he told his client that it appeared the estate could be completed for a fee of

[5]The corresponding provision of the current Rules of Professional Conduct for Attorneys is SCR 20:8.4.

$2,325. One month later, the client was told that the balance of Attorney Strasburg's fee would be $3,005. When the client expressed concern over the change in the amount of fees, Attorney Strasburg's office told him that the amount due would be $2,945. Attorney Strasburg subsequently sent the client a statement for services in the amount of $3,000. That statement set forth items of costs incurred, including a payment of $99 to the register in probate and $750 to an accounting firm; in fact, Attorney Strasburg had paid only $5 to the register in probate and had not paid or even retained the services of any accounting firm.

The client telephoned Attorney Strasburg concerning the bill he had received and during that conversation Attorney Strasburg became abusive and threatened legal action if the bill were not paid by the end of the week. In a subsequent telephone conversation, when the client said there must have been some mistake concerning the fee, Attorney Strasburg threatened that the estate proceeding would be "screwed up" and that he would sue if his fees were not paid. During that conversation he used abusive language and hung up on the client. The client then terminated Attorney Strasburg's services and requested return of his file and an itemization of services rendered. Attorney Strasburg responded that the client would have to pay $75 to have the file copied.

This fee dispute was ultimately resolved by a fee arbitration panel of the Milwaukee Bar Association, which lowered the total charges from $4,325 to $2,325. The client then retained other counsel to complete the probate of the estate.

The referee concluded that Attorney Strasburg had charged a clearly excessive fee in this matter, in violation of SCR 20.12, and engaged in offensive personality, in violation of SCR 20.04(1) and 40.13, by threatening legal

action for his fees prior to completion of the legal work, contrary to his original agreement with the client, and by repeatedly using abusive language in response to his client's efforts to discuss his bill. The referee also concluded that Attorney Strasburg engaged in conduct involving dishonesty, in violation of SCR 20.04(4), by threatening legal action based on a bill which included overstated amounts of costs.

The fourth matter considered in this proceeding was Attorney Strasburg's overbilling of clients over a three-year period: in 1985, 1986 and 1987, he overbilled 33 clients in a total amount of $11,274.05 for costs allegedly incurred; one of those clients was overcharged $1,500. The referee concluded that Attorney Strasburg thereby engaged in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of SCR 20.04(4), by making misrepresentations in his billings.

We adopt the referee's findings of fact and conclusions of law regarding these matters and agree that a two-year license suspension is appropriate discipline for the totality of Attorney Strasburg's misconduct. Attorney Strasburg violated his fundamental duty to protect and further the interests of his clients in those matters in which he took action on behalf of his clients which had been directed by those clients' relatives, not by the clients themselves, and without consulting his clients. He also dealt dishonestly with his clients when he overcharged them for his services and for costs allegedly incurred. In essence, he took from his clients money to which he was not entitled. The seriousness of that misconduct, as well as its repetition over a long period of time, warrants the imposition of severe discipline, namely, a two-year suspension of Attorney Strasburg's license to practice law, as the referee has recommended. We also agree with the referee's recommendation that

Attorney Strasburg be required to make restitution, with prejudgment and postjudgment interest at statutory rates, to the clients who were overcharged costs.

IT IS ORDERED that the license of John W. Strasburg to practice law in Wisconsin is suspended for a period of two years, commencing April 9, 1990.

IT IS FURTHER ORDERED that within 60 days of the date of this order John W. Strasburg make restitution to the clients who were overcharged costs, as set forth in the referee's report on file in this proceeding, and file with the Board of Attorneys Professional Responsibility proof acceptable to the Board that the restitution has been made.

IT IS FURTHER ORDERED that within 60 days of the date of this order John W. Strasburg pay to the Board of Attorneys Professional Responsibility the costs of this disciplinary proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of John W. Strasburg to practice law in Wisconsin shall be suspended until further order of the court.

IT IS FURTHER ORDERED that John W. Strasburg comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

STEINMETZ, J., took no part.